**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 09-412-DLB**

**JAMIE HICKS**                                                                                        **PLAINTIFF**

vs.                             **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                 **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action, proper under 42 U.S.C. § 1383(c)(3),[1] to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby affirms the decision of the Commissioner.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jamie Hicks filed an application for social security income (SSI) payments on October 29, 2003. (Tr. 64-76).[2] Plaintiff alleges she became unable to work on May 31, 1998. (Tr. 65). She claims disability due to hip and back pain, hypothyroidism, depression, and anxiety. (Tr. 65). Her application was denied initially and upon reconsideration. (Tr. 47-51). At Plaintiff's request, an administrative hearing was conducted on September 22,

---

[1] Because Plaintiff's initial application sought supplemental security income the Court's jurisdiction is proper under 42 U.S.C. § 1383(c)(3). Section 1383(c)(3) incorporates by reference 42 U.S.C. § 405(g) stating that "[t]he final determination of the Commissioner ... after a hearing under [§ 1383(c)(1)] shall be subject to judicial review as provided in section 405(g) of this title.").

[2] Plaintiff filed prior applications for benefits on December 6, 2000 and August 31, 2001. The first of these claims was denied on April 23, 2001. The second claim was denied in a decision by an Administrative Law Judge (ALJ) dated October 8, 2003. (Tr. 32-42).

2005, by Administrative Law Judge (ALJ) James P. Alderisio. (Tr. 232-57). On November 23, 2005, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to SSI. (Tr. 13-21). This decision became the final decision of the Commissioner when the Appeals Council denied review on April 7, 2006. (Tr. 5-7). Plaintiff sought judicial review in federal court, after which the claim was remanded to ALJ Alderisio for further administrative proceedings. (Tr. 277-286). On remand, the ALJ was directed to consider more fully the conflicts in evidence relative to Plaintiff's mental impairments. (Tr. 286).

Another administrative hearing was held on March 16, 2007. (Tr. 499-514). ALJ Alderisio issued an unfavorable decision on July 3, 2007, denying Plaintiff's request for benefits. (Tr. 261-271). Plaintiff again sought judicial review, and this Court remanded a second time, citing as its basis the improper weight given to conflicting evaluations of Plaintiff's mental impairments and the ALJ's failure to properly consider and apply Social Security Regulation 02-01p when determining the effect Plaintiff's obesity has on her ability to work. (Tr. 543-44).

Upon remand, Plaintiff's case was reassigned to ALJ Frank Letchworth, who conducted yet another administrative hearing on July 2, 2009. (Tr. 562-86). ALJ Letchworth issued an unfavorable decision on September 23, 2009, which is the subject of Plaintiff's current appeal. (Tr. 518-28). On December 15, 2009, Plaintiff filed the instant action. The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 10, 11).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether

2

it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). An administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that there was no evidence that Plaintiff had engaged in substantial gainful activity since October 29, 2003, the date of her most recent application.[3] (Tr. 521).  At Step 2, the ALJ found Plaintiff's chronic low back and hip pain, morbid obesity, diabetes mellitus, hypothyroidism, an affective disorder, generalized anxiety disorder, and borderline intellectual functioning to be severe impairments within the meaning of the regulations.  (Tr. 521).  However, at Step 3, the ALJ found that Plaintiff's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 522).  The ALJ specifically assessed the severity of Plaintiff's mental impairments, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, Subsection 12.00(C) (Evaluation of Mental Impairments), concluding "there is no evidence of marked or extreme limitations" relative to psychological functioning.  (Tr. 522).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light work with the following exertional and nonexertional restrictions:

> [Claimant] can perform no work that requires climbing ladders/ropes/ scaffolds, or crawling; she can perform no more than occasional climbing ramps/stairs, stooping, bending or crouching; the claimant can sit in one hour segments and stand or walk in 20 minute segments at a time, with the ability to sit or stand at will; she cannot perform work that requires concentrated exposure to unprotected heights, or hazardous equipment or machinery; she can perform simple instructions in a setting that ... requires no more than casual contact with other persons; she can adapt to occasional changes in

---

[3]Plaintiff claims a disability onset date of May 31, 1998.  However, Plaintiff's August 31, 2001 application for which Plaintiff also claimed a disability onset date of May 31, 1998, was previously adjudicated when ALJ K. Dickson Grissom issued an unfavorable decision on October 8, 2003, which has now been made final.  (Tr. 32-42). The doctrine of res judicata therefore bars subsequent adjudication of the time period between May 31, 1998 and October 8, 2003.

4

the work setting and routines; she cannot perform production rate or quota work.

(Tr. 522). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform her past relevant work as a cashier, fast food worker, and inspector. (Tr. 527).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that, despite Plaintiff's severe impairments, there were a significant number of jobs available to her in the national and regional economies. (Tr. 527). Specifically, the vocational expert (VE) testified that Plaintiff would be able to perform the job of a hand packer, production worker, hand assembler, and small parts inspector. (Tr. 528). Since the positions identified by the VE were representative of a significant number of jobs in the regional and national economies, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act. (Tr. 528).

**C.    Analysis**

Plaintiff advances two arguments on appeal. First, Plaintiff argues that the ALJ's assessment of her RFC was not supported by substantial evidence because the ALJ improperly rejected the mental assessment of one-time psychological examiner Reba Moore.[4] Second, Plaintiff contends that the Commissioner did not sustain his burden at Step 5 of the sequential evaluation because the hypothetical question posed to the VE did

---

[4]The Court observes that in her motion for summary judgment (Doc. # 10), Plaintiff also made mention of psychiatrist Dr. Kenneth Eggerman's 2004 assessment that she was "mildly to moderately limited" in her ability to "interact appropriately with the public, supervisors, and co-workers." (Tr. 160). However, Plaintiff does not expressly challenge that ALJ Letchworth assigned "great weight" to Dr. Eggerman's narrative assessments (Tr. 525), but does seem to imply that he failed to properly consider evidence from Dr. Eggerman's evaluation that was favorable to her. (Doc. # 10 at 3). Insofar as Plaintiff is attempting to argue that ALJ improperly evaluated Dr. Eggerman's opinion, the Court rejects this argument. Dr. Eggerman's assessment that Plaintiff was mildly to moderately limited in her ability to cope and interact with others was properly assessed against the entirety of the medical record, which the Court discusses at length below.

5

not accurately reflect the limitations contained in the ALJ's RFC determination. Specifically, Plaintiff argues that the hypothetical was inaccurate because it assumed she could "perform simple instructions" and "adapt to occasional changes in the work setting." (Doc. # 10). Each of these arguments will be addressed in turn.

### 1. The ALJ Properly Rejected Reba Moore's Mental Assessment

Plaintiff argues here, as she has on all other previous appeals for judicial review, that the ALJ improperly rejected the opinion of licensed psychological practitioner Reba Moore, who assessed Plaintiff's mental impairments in September 2005. (Tr. 223-29). Moore concluded that Plaintiff had no useful ability to relate to co-workers, deal with the public, or deal with work stress. (Tr. 230).[5] Moore also determined Plaintiff's ability to function independently and demonstrate reliability is "fair," meaning she is seriously limited in these areas but not precluded from performing them. (Tr. 203-31).

An ALJ is obligated to follow the residual functional capacity and findings made by a previous ALJ relative to the same claimant absent new or material evidence of an improvement in the claimant's condition. SSAR 98-4(6) 63 Fed. Reg. 29771-01 (June 1, 1998); *see Drummond v. Comm'r Soc. Sec.*, 126 F.3d 837, 842-43 (6th Cir. 1997). District Judge G. Wix Unthank originally remanded Plaintiff's case in January 2007 because ALJ Alderisio failed to consider Moore's assessment of Hicks' mental condition; an assessment he concluded was new and material. (Tr. 285). On remand, ALJ Alderisio attempted to tackle the deficiencies identified by the district court, which–in its view–amounted to a failure to adequately account for Moore's assessment as it conflicted with psychiatrist Dr.

---

[5]This assessment was provided by way of a check-list, which accompanied a more thorough narrative assessment. (Tr. 230-31).

Kenneth Eggerman's 2004 assessment that Plaintiff was only "mildly to moderately limited" in her ability to cope with work stress and deal with others. (Tr. 160). Again, the Plaintiff sought judicial review and again the district court remanded with instructions to more fully assess Moore's restrictions. (Tr. 540). Upon reassignment, ALJ Letchworth rendered an unfavorable decision wherein he rejected Moore's mental assessment. His decision, in this Court's view, adequately reconciles inconsistencies between Moore's and Dr. Eggerman's opinions relative to Plaintiff's mental impairments. Unlike treating source opinions, consultative examiners' opinions are not entitled to any "special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Sec'y Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) (physician who examined claimant only once was not a treating physician). The weight given a medical opinion depends upon the extent to which it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques *and* is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (emphasis added). The district court, in its prior decisions, was critical that ALJ Alderisio did not adequately account for Moore's assessment that Plaintiff possessed only a fair ability to function independently and to demonstrate reliability. (Tr. 230-231, 286).

Past treatment records indicate Plaintiff has the ability to adequately cope with her anxiety so as to function independently and demonstrate reliability. On July 11, 2006, Plaintiff met with one-time consultative examiner Dr. Jeanne Bennett who opined that claimant's "global intellectual functioning was estimated to be in the average range." (Tr. 412). Dr. Bennett diagnosed Plaintiff with anxiety disorder (not otherwise specified), which she concluded had no affect on Plaintiff's ability "to carry out instructions toward the

7

performance of simple repetitive tasks" and only slightly limited her ability to "respond appropriately to supervision, coworkers, and work pressures in a work setting." (Tr. 413). Dr. Bennett's assessment more consistently reflects Dr. Eggerman's findings from April 2004. (Tr. 155-60). Dr. Eggerman concluded that Plaintiff's anxiety was "moderate" and her ability to understand and follow simply instructions was only "minimally limited." (Tr. 158-59). He further recommended that Plaintiff continue with her psychotropic treatment and psychotherapy to address "residual anxiety symptoms" or "avoidant behaviors." (Tr. 160).

ALJ Letchworth pointed out, however, that Dr. Bennett's and Dr. Eggerman's assessments of mild limitations regarding Plaintiff's ability to function independently and reliably in public and in the work setting stand in stark contrast to Moore's opinions that Plaintiff has "no useful ability" to relate to coworkers, deal with the public, or deal with work stress. (Tr. 230). Because they are all one-time consultative examiners, Moore's assessment is entitled to no greater weight than Dr. Eggerman's and Dr. Bennett's narrative assessments. In her narrative assessment, Moore herself concluded that Plaintiff had moderate difficulty functioning in the psychological, occupational, and social realms, and further, that she presented with only moderate symptoms. (Tr. 229).[6] This conclusion seems somewhat at odds with her "check-list" assessment that Plaintiff was severely limited in her ability to function and deal with work-related stress. (Tr. 230-31).

---

[6]Dr. Bennett assigned Plaintiff a Global Assessment of Functioning (GAF) score of 55, which indicates only moderate symptoms. *Simpson v. Comm'r Soc. Sec.*, 344 F. App'x 181, 191 (6th Cir. 2009) ("GAF score of 55 indicat[es] moderate symptoms.").

Dr. Bennett and Dr. Eggerman's opinions are also more consistent with the Plaintiff's testimony regarding her marked involvement in daily activities such as driving, fixing meals, attending church once a week, and meeting with her sister four times weekly. (Tr. 566, 572). ALJ Letchworth observed that Plaintiff was under no apparent psychological distress at the hearing and "appeared to understand the hearing process." (Tr. 526). *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) (It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the medical evidence). ALJ Letchworth explained that because Plaintiff's RFC for light work was limited only to those jobs that required "no more than casual contact with other persons" and those that do not require "production rate or quota work," it adequately accounted for Plaintiff's limiting effects due to her anxiety. (Tr. 526).

Determining an individual's RFC is the sole province of the ALJ; it is an administrative finding, not a medical opinion. *Smith v. Comm'r Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). ALJ Letchworth was well within his discretion to reject Moore's opinion in favor of Dr. Bennett's and Dr. Eggerman's mental assessments of Plaintiff's impairments, which he accorded "great weight" given they more closely reflected the ALJ's impressions and were more consistent with the objective medical evidence. Moore's assessment was not entitled to any greater weight as she is not Plaintiff's treating physician. *Atterberry*, 871 F.2d at 572.

### 2. The Hypothetical Posed to the VE Accurately Reflected the Limitations Contained in the RFC

Plaintiff next contends the Commissioner did not sustain his burden at Step 5 of the

9

sequential evaluation process because the hypothetical posed to the VE did not accurately portray her impairments. A VE's testimony in response to a hypothetical question will provide substantial evidence of claimant's RFC to perform work in the national economy where the question posed accurately reflected the claimant's physical and mental impairments. *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990); *see also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 553 (6th Cir. 2010) (response to hypothetical question to VE provided substantial evidence where the limitations used in the ALJ's hypothetical accurately portrayed claimant's mental condition). It is well established, however, that an ALJ need only include those restrictions which enjoy support when assessed against the backdrop of the entire record of objective medical evidence. *Stanley v. Sec'y Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) (in formulating a hypothetical question, the ALJ need only incorporate those limitations which he has deemed credible).

Plaintiff asserts the ALJ's hypothetical failed to include "[t]he existence of additional mental limitations." Presumably, the mental limitations to which Plaintiff generically refers are those included in Moore's mental assessment. Although woefully perfunctory, it seems Plaintiff's argument rests on the assumption that Moore's assessment was improperly rejected, thus, the ALJ's hypothetical to the VE improperly omitted an accurate depiction of Plaintiff's mental impairments, which would have required incorporating Moore's observations. This argument is without merit.

As discussed previously, the ALJ provided legally sufficient reasons for rejecting Moore's assessment and appropriately resolved any conflicts in evidence relative to Plaintiff's mental impairments; therefore, the ALJ was not required to include Moore's

10

stated limitations in his hypothetical to the VE. *See Gant v. Comm'r Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("Because the ALJ properly discounted the medical opinions of the other doctors, he also properly excluded the limitations assessed by those doctors from the hypothetical question."). ALJ Letchworth instead incorporated those mental limitations consistent with Dr. Eggerman's mental assessment, which included "no more than occasional and casual contact with other persons" and the ability only to adjust to "occasional changes in work setting or routine." (Tr. 582). Accordingly, the hypothetical posed to the VE was an accurate summation of the mental limitations included in the RFC. *See Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

## III.  CONCLUSION

This record contains substantial evidence supporting the ALJ's finding that Plaintiff is not disabled. Although the record contains differing opinions as to Plaintiff's mental impairments, the Court finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Accordingly, for the reasons stated,

**IT IS ORDERED THAT:**

(1) The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED**;

(4) A judgment affirming this matter will be entered contemporaneously herewith.

This 8th day of February, 2011.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-09-412-HicksMOO.wpd